SOPHIA MURPHY *v*. INDEPENDENT ORDER OF THE SONS AND DAUGHTERS OF JACOB OF AMERICA.

1. BENEVOLENT SOCIETIES. *Rules. Forfeitures. Construction.*

   The rules of a benevolent society on the subject of rights to benefits should be strictly construed to prevent forfeitures.

2. SAME. *Assessments. Notice. Default.*

   A member of a benevolent society is not in default for an assessment, in the absence of notice of its imposition, where the by-laws provide for such notice.

3. SAME. *Subordinate lodges. Agency. Assessments. Collections. Proofs of death.*

   Subordinate lodges of a benefit society are the agents of the grand lodge in respect to the payment and collection of assessments and proofs of death.

4. SAME. *Officers of subordinate lodge. Default in respect to proof of death.*

   If a beneficiary be not in default in the making of proof of death of a member of a benevolent society, a forfeiture of his rights cannot be predicated of a wilful failure of the officers of a subordinate lodge to perform their duty in respect thereto.

5. SAME.

> Opinion in *Knights of Pythias* v. *Withers*, 177 U. S., 260, approved and
> adopted.

FROM the chancery court, first district, of Hinds county.

HON. H. C. CONN, Chancellor.

Sophia Murphy, the. appellant, was the complainant, and the Independent Order of the Sons and Daughters of Jacob of America, a benevolent society, the appellee, was the defendant in the court below.  One Delia Murphy, a daughter of appellant, joined the appellee society December 16, 1896.  She received a benefit certificate, her mother, appellant, being named as the beneficiary, by which the society agreed to pay appellant, at the death of Delia, a sum of money, but the promise was upon the condition that Delia at her death should be in good standing with the society.  Delia paid all dues, and was in good standing until June, 1897, when she accidentally stepped upon a nail, which penetrated her foot and made her seriously ill.  Under its constitution and by-laws the duty devolved upon the order to provide for its members during illness, and to allow a "sick benefit" equal to two dollars per week to each member who should become unable to work.  Out of the "sick benefit" the local lodge was to deduct all dues, assessments, fines, etc., accruing to the order, and pay the ill member the balance.  The "sick benefit" exceeded the dues, fines and assessments.  Delia notified the order of her condition.  The proper officer of the society visited her and promised that the "sick benefit" should be paid her, but it was never done.  Delia died May 8, 1898, never having recovered from the illness produced by the accident.  After the death of her daughter the appellant, the beneficiary in Delia's certificate, demanded of the officers of the subordinate lodge that they make proof of the death, etc., as required by the by-laws of the order, but they refused to do so, and upon demand of payment of the certificate, the society refused, disclaiming all liability.  Thereupon

appellant made proof of death as best she could, but her proofs did not conform to the regular proofs required by the by-laws to be made by the officers of the subordinate lodge. To the suit instituted by appellant the society made defense, claiming: (1) That Delia was not in good standing at the time of the accident or when she died; (2) that the accident did not result in permanent injury, and that Delia was able to work after the misfortune; (3) that death did not result from the accident; (4) that proof of death was not furnished; and (5) that it was not bound by the acts or omissions of the subordinate lodge. Testimony was taken and the case heard, resulting in a decree of the court below adverse to appellant, from which she appealed to the supreme court.

*Brame & Brame*, for appellant.

Defendant did not claim that Delia was ever suspended from the society, nor does it claim that she was ever notified that she was in arrears. Notification was absolutely necessary under the laws of the society (sec. 18, p. 39). It is the duty of the "worthy scribe" to notify each member every month of his arrears. The truth is, Delia was never in arrears. Even without the express provision of the society's laws, a member of a benevolent society must have notice of assessments and of suspension, and the burden of proof is on defendant to show the notice. *Supreme Lodge* v. *Johnson,* 78 Ind., 110; *McCorkle* v. *Ins. Association,* 71 Tex., 149; *Tobin* v. *Society,* 72 Iowa, 261; *Scheiffler* v. *Lodge,* 45 Minn., 256; Hirschell on Law of Fraternities, 54. The receipt and retention of subsequent dues by the society is a waiver of forfeiture. *Millard* v. *Legion of Honor,* 81 Cal., 345; *Tobin* v. *Society,* supra.

The contention that the accident did not result in permanent injury failed on the facts. Delia was not able to work after she stuck the nail in her foot. Whether the accident produced death or not is immaterial, since the "sick benefit" exceeded all assessments and other dues.

When the duty of making proofs of death devolves upon a subordinate lodge, or its officers, as here, the society cannot escape liability by reason of the neglect of such lodge or officers to perform duty. *Supreme Council* v. *Bogle,* 10 Ind. App., 301; 3 Am. & Eng. Enc. L. (2d ed.), 1109, note. A beneficiary is not required to see that such lodge or officers perform the duty. *National Union* v. *Thomas,* 25 Wash. (D. C.), L. R., 200; *Young* v. *Council.* 63 Minn., 506.

*Calhoon & Green,* for appellee.

Benevolent orders like appellee must have rules and regulations to govern all their members, and all their members are bound by them as of contract. Am. & Eng. Enc. L., title, "Benevolent Associations."

The mode of proof of death is necessarily binding on all their members. Without it the order must soon drift to ruin without record, chart or compass. The grand lodge (not the subordinate lodge of membership) alone is empowered to order assessments to pay losses under the constitution of the order, and it is powerless to do it except upon the proper prescribed proof of death, which is part of the contract of membership, and in which each member to be assessed has a vital interest. There is no such proof of death in this record.

The officers specified in the constitution to make the proofs of death can in no sense be regarded as agents of the order in regard to such proofs so that their neglect or refusal to swear is the neglect or refusal of the order. The order could not, and is not required to, swear or act, but all of its constituents agreed in the constitution that death claims should depend on the judgment, conscience and affirmative action of the officers named.

Surely, the affidavit, whether by these officers or others, must conform in essentials to constitutional requirements. Now, the pleader in the case at bar saw the necessity of proof of

death, and by affidavit, and so he presents one.    Exhibit E to this bill.    It is defective in many essential particulars.

Delia was not straight with her lodge when, on June 10, 1897, she stuck the nail in her foot.    She then owed fines for nonattendance for March, April and May, 1897, and for the lot tax imposed in April, 1897, and this is sought to be avoided by attempting to show that she had no notice of these fines.    The nonpayment, of course, made her nonfinancial.    Pamphlet Laws of the Society, p. 29, sec. 20, and p. 28, secs. 7, 8, 9, 15.    But aside from all this, Delia did not pay regular assessments Nos. 20, 21, 22, and 23.

Pamphlet Laws of the Society, p. 29, sec. 1, directs subordinate lodges to care and provide for sick members, but only for those "who are financial," and then provides that dues for asessments "while a member is sick and receiving aid" shall be deducted, etc., and sec. 5, p. 30 provides "when all allowance is made how the set-off is to be made."    Clearly the set-off can never be claimed except where "an allowance is made to a sick member" (sec. 5), and such sick member "is receiving aid."    No allowance had been made for Delia, and she was never receiving aid.

WHITFIELD, J., delivered the opinion of the court.

Delia Murphy was not "nonfinancial" within the meaning of sec. 7, art. 5, and sec. 20 of same article, taken together, and construed strictly against forfeiture, for two reasons: first, she was not shown to be "three months in arrears," as to fines; and second, she had not been "declared" nonfinancial.    Two provisions of a similar order, strikingly like these, were construed not to work a forfeiture without a "declaration" to that end, in *Scheufler* v. *Grand Lodge,* 45 Minn., 261.

She was, then, being "financial" when the injury occurred, entitled to the sick benefit of one dollar per week, as provided in sec. 1, art. 6, sec. 5, art. 6, and sec. 12, art. 10.    Her lodge was notified of her condition, but neglected her.

It is said that she did not herself pay assessments Nos. 20, 21, and 22. There is no evidence at all satisfactory that she was ever notified of these assessments. The last clause of sec. 18, art. 10 expressly made it the duty of the worthy scribe of the subordinate lodge "to notify each member as to his arrears." It is necessary that such notice should be given. This is in accordance with all the authorities. *McCorkle* v. *Ins. Association,* 71 Texas, 151; *Supreme Lodge* v. *Johnson,* 78 Ind., 110. A contract could, of course, be so framed as to dispense with it, but it is here required.

It is said that the proof of death was not made by the proper officers, nor in the proper mode. The appellant did all she could. The officers required by the constitution to make it out and forward it refused to do so. It cannot be that a wilful failure of these officers to do their duty in the matter can cause a forfeiture of appellant's rights, she not being in fault. And it is so expressly held in *Young* v. *Grand Council,* 63 Minn., 506. That case properly holds that the subordinate lodge is, as to this, the agent of the grand lodge, which doctrine is well settled. 1 Bacon on Ben. Societies, secs. 118, 144. It is there said that the subordinate lodge is the agent of the grand lodge, and not of the plaintiff, in all that relates to the collecting of the assessments for death benefits, etc.

Finally, it is said that the subordinate lodge did not pay the grand lodge, even if Delia Murphy can be regarded as not delinquent in not having paid the subordinate lodge, because not notified of assessments Nos. 20, 21 and 22, and that sec. 18, art. 7, is conclusive, in this view, of nonliability. The hidden purpose of sec. 18 seems to be to make the subordinate lodge the agent of the assured in all things, and to provide that its negligence shall not bind the grand lodge as principal. We say "hidden," because it is not clearly so expressed. But, as shown, the subordinate lodge, under the constitution and by-laws, taken as a whole, and the general law applicable to them and to the facts of this case, is the agent of the grand lodge as to the

payment and collection of assessments. It was expressly held in *Schunch* v. *Gegenseitizer Wittwen und Waisen Fond,* 44 Wis., 375, that the grand lodge cannot escape liability on the failure of the subordinate lodge to do its duty in remitting to the grand lodge the assessment. Says the court: "The grove [the subordinate lodge] acts for and represents the defendant [the grand lodge] in making the contract with the member, unless we adopt as correct the idea that the member, by some one-sided arrangement, makes a contract with himself through his own agent. It seems to us that any such position as that the grove is the sole agent of the member in effecting the insurance or collecting the assessments, is untenable."

It may be admitted in this case, as in that, that the provisions of the constitution and by-laws are difficult to reconcile with each other, being very inartificially drawn. But the great supervening principles in the light of which they are to be construed, that as against forfeitures strict construction must be had, so as to prevent a forfeiture if reasonably possible, and that in dealing with these benevolent orders liberal construction in favor of the insured is to be indulged applied here, satisfy us that the appellee is liable.

Since the writing of the above the United States supreme court has, in the case of *Supreme Lodge Knights of Pythias* v. *Josephine Withers,* 177 U. S., 260, decided the exact point here involved, as we have. That opinion, delivered by Justice Brown, is so luminous and cogent in its reasoning that we quote, to adopt, the following:

"There seems to have been an attempt on the part of the defendant to invest Mr. Chadwick with the power and authority of an agent, and at the same time to repudiate his agency. But the refusal to acknowledge him as agent does not make him the less so, if the principal assume to control his conduct. It is as if a creditor should instruct his debtor to pay his claim to

a third person, and at the same time declare that such third person was not his agent to receive the money. It would scarcely be contended, however, that such payment would not be a good discharge of the debt, though the third person never accounted to the creditor, much less that it would not be a good payment as of a certain day, though the remittance, through the fault of the person receiving it, did not reach the creditor until the following day.

"The position of the secretary must be determined by his actual power and authority, and not by the name which the defendant chooses to give him. To invest him with the duties of an agent, and to deny his agency, is a mere juggling with words. Defendant cannot thus play fast and loose with its own subordinates. Upon its theory the policy holders had absolutely no protection. They were bound to make their monthly payments to the secretary of the section, who was bound to remit them to the board of control, but they could not compel him to remit, and were thus completely at his mercy. If he chose to play into the hands of the company, it was possible for him, by delaying his remittance until after the end of the month, to cause a suspension of every certificate within his jurisdiction, and in case such remittance was not made within thirty days from such suspension (sec. 6), apparently to make it necessary under sec. 4 for each policy holder to regain his membership by making a new application, surrendering his forfeited certificate, making payment of the required membership fee, undergoing a new medical examination, and paying a premium determined by his age at date of the last application. In other words, by the failure of the secretary, over whom he had no control, to remit within thirty days, every member of the section might lose his rights under his certificate and stand in the position of one making a new application, with a forfeiture of all premiums previously paid. It could not thus clothe the secretaries of the sections with the powers of agents by authorizing them to receive monthly payments and instructing them

to account for and remit them to the supreme lodge at Chicago, and in the same breath deny that they were agents at all. The very definition of an agent given by Bouvier, as 'one who undertakes to transact some business, or manage some affair for another, by the authority and on account of the latter, and to render an account of it,' presupposes that the acts done by the agent shall be done in the interest of the principal, and that he shall receive his instructions from him. In this case the agent received his instructions from the supreme lodge, and his actions were, at least, as much for the convenience of the lodge as for that of the insured. If the supreme lodge intrusted Chadwick with a certain authority, it stands in no position to deny that he was its agent within the scope of that authority.

"The reports are by no means barren of cases turning upon the proper construction of this so-called "agency clause," under which the defendant seeks to shift its responsibility upon the insured for the neglect of Chadwick to remit on the proper day. In some jurisdictions it is held to be practically void and of no effect; in others, it is looked upon as a species of wild animal, lying in wait and ready to spring upon the unwary policy holder, and in all, it is eyed with suspicion and construed with great strictness. We think it should not be given effect when manifestly contrary to the facts of the case, or opposed to the interests of justice. Wherever the ageny clause is inconsistent with the other clauses of the policy conferring power and authority upon the agent, he is treated as the agent of the company rather than of the policy holder. The object of the clause in most cases is to transfer the responsibility for his acts from the party to whom it properly belongs to one who generally has no knowledge of its existence. It is usually introduced into policies in connection with the application, and for the purpose of making the agent of the company the agent of the party making the application, with respect to the statements therein contained.

"It was formerly held in New York (*Rohrback* v. *Germania Fire Ins. Co.,* 62 N. Y., 47, and *Alexander* v. *Germania Fire Ins. Co.,* 66 N. Y., 464) that, where the insured had contracted that the person who had procured the insurance should be deemed his agent, he must abide by his agreement, and where such person had, through fault or mistake, misstated in the application to the company the declarations of the assured, the latter must suffer for the error or wrong, but in a subsequent case (*Whited* v. *Germania Fire Ins. Co.,* 76 N. Y., 415) this doctrine was held to be limited to such acts as the agent performed in connection with the original application, and that in a renewal of the policy such party was treated as the agent of the defendant, for whose acts it was bound, and that it was within his power to make a valid waiver of the conditions of the policy. Said the court in its opinion: 'That he was the agent of the defendant it would be fatuous to deny, were it not for a clause in the policy [the agency clause] upon which the defendant builds. . . . But if the insured is to be now bound as having thus contracted, there must be mutuality in the contract. No man can serve two masters. If the procurer of the insurance is to be deemed the agent of the insured . . . he may not be taken into the service of the insurer as its agent, or if he is so taken, the insurer must be bound by his acts and words, when he stands in its place and moves and speaks as one having authority from it; and *pro hac vice,* at least, he does then rightfully put off his agency for the insured and put on that for the insurer. . . . Nor will it hold the plaintiff so strictly to the contract he made as to permit the defendant to ignore it and take his agent as its agent, and yet make him suffer for all the shortcomings of that person while acting between them and while under authority from the defendant to act for it.' So in *Sprague* v. *Holland Purchase Ins. Co.,* 69 N. Y., 128, the insured signed a blank form of application, which was filled up by the company's agent without any knowledge or dictation of the insured. There were

false statements therein, occasioned by the mistake or inadvertence of the agent. The policy contained the agency clause, as well as the condition that the application must be made out by the defendant's authorized agent, and it was held, using the language of the court in the White case, that the latter clause 'swallowed down' the former, and that there was no warranty binding upon the plaintiff.

"In *Partridge* v. *Commercial Fire Ins. Co.,* 17 Hun, 95, it was said of the agency clause: 'This is a provision which deserves the condemnation of courts whenever it is relied upon to work out a fraud, as it is in this case. The policy might as well say that the president of the company should be deemed the agent of the assured. . . . Such a clause is no part of a contract. It is an attempt to reverse the law of agency, and to declare that a party is not bound by his agent's acts. Whether one is an agent of another is a question of mixed law and fact, depending on the authority given expressly or impliedly When a contract is, in fact, made through the agent of a party, the acts of that agent in that respect are binding on the principal."

"In *Nassauer* v. *Susquehanna Ins. Co.,* 109 Pa., 509, under a by-law providing that 'in all cases the person forwarding applications shall be deemed the agent of the applicant,' it was held, under the circumstances of the case, that the agent of the company soliciting insurance was not the agent of the applicant, and that such by-law was not binding upon him. Although the insured is supposed to know at his peril the conditions of the policy, that will not bind him to a provision which is not true, and one which the company had no right to insert therein. 'We do not assent,' said the court, 'to the proposition that the offer [that the agent made his own valuation of the property] was incompetent, because Laubach was the agent of the assured in filling up the application and forwarding it to the company. He was not the agent of the assured. The latter had not employed him for any purpose. He was the agent of the defendant company, and as such called upon the assured

and solicited a policy, and, having obtained his consent, pro-
ceeded to fill up the application for him to sign. As to all
these preliminary matters the person soliciting the insurance
is the agent of the company.' The court, speaking of the
agency clause, observed: 'This court, in the case above cited
[*Columbia Ins. Co.* v. *Cooper*, 50 Pa. St., 331], characterized a
somewhat similar provision as a "cunning condition." The
court might have gone further and designated it as a dishonest
condition. It was the assertion of a falsehood, and an attempt
to put that falsehood into the mouth of the assured. It formed
no part of the contract of insurance. That contract consists
of the application and the policy issued in pursuance thereof.
In point of fact, the assured does not see the policy until after
it is executed and delivered to him. In many instances it
is laid away by him and never read, especially as to the elabo-
rate conditions in fine print. Grant that it is his duty to read
it, his neglect to do so can bind him only for what the company
had a right to insert therein. He was not bound to suppose
that the company would falsely assert, either by direct lan-
guage in the policy or by reference to a by-law, that a
man was his agent who had never been his agent, but who
was, on the contrary, the agent of the company. Notwith-
standing this was a mutual company, the assured did not
become a member thereof until after the insurance was ef-
fected. Hence a by-law of the company of which he had no
knowledge, and by which he was bound, could not affect him
in matters occurring before the granting of the policy. And
even the by-law of a mutual company which declares that
black is white does not necessarily make it so.' Similar cases
are those of *Eilenberger* v. *Ins. Co.*, 89 Pa. St., 464; *Susque-
hanna Ins. Co.* v. *Cusick*, 109 Pa. St., 157, and *Kister* v. *Ins.
Co.*, 128 Pa. St., 553.

"The case of *Lycoming, etc., Ins. Co.* v. *Ward*, 90 Ill., 545,
resembles the case under consideration. In that case it was
held that, where the assured contracts with one as the agent

of the insurer, believing him to be such, and does not employ such supposed agent to act for him in obtaining insurance, such person has no power to act for or bind the insured, though the policy may provide that the person procuring the insurance shall be deemed the agent of the insured, and not of the company. Plaintiff paid the premium to the person with whom she contracted for the insurance, and of whom she obtained the policy. It was held that such person, assuming to be the agent of the company, the payment was binding upon the company, whether he paid the money over or not. In that case the person to whom the money was paid was not in reality an agent of the company, although plaintiff believed him to be such, but only a street insurance broker, who represented himself to be the agent of the company. Said the court: 'Under such circumstances who should bear the loss arising from the fraud committed by the street broker? Should it fall upon the plaintiff, who was an innocent party in the transaction, or should it fall upon the company, who alone enabled Puschman to successfully consummate the contract of insurance by placing in his hands the policy for delivery? The street broker was not the agent of the plaintiff for any purpose. If the evidence be true, he had no authority to act for her or bind her in any manner whatever by what he might do in the premises, and while he may not have been, in fact, the agent of the company, still the company, by placing the policy in the hands of the street broker for delivery, is estopped from claiming that the payment made to him upon delivery of the policy is not binding upon the company.' In Indiana it is also held that a recital in the policy that the broker obtaining an insurance is the agent of the insured is not conclusive upon that subject. *Indiana Ins. Co.* v. *Hartwell,* 100 Ind., 566. In *North British, etc., Ins. Co.* v. *Crutchfield,* 108 Ind., 518, the agency clause was held to be absolutely void as applied to a local agent, upon whose counter signature the validity of the policy, by its terms, was made to depend.

"In *Boetcher* v. *Hawkeye Ins. Co.,* 47 Iowa, 253, it was held that, if the assured had the right to believe the soliciting agent of the company, the insertion of a clause in the policy providing that he was the agent of the assured constituted a fraud upon the latter, of which the company could not take advantage.

"Speaking of the agency clause in *Continental Ins. Co.* v. *Pearce,* 39 Kan., 396, it said: 'This is but a form of words to attempt to create on paper an agency which in fact never existed. It is an attempt of the company not to restrict the powers of its own agent, but an effort to do away with that relation altogether by mere words, and to make him in the same manner the agent of the assured, when in fact such relation never existed. We do not believe the entire nature and order of this well established relation can be so completely subverted by this ingenious device of words. The real fact, as it existed, cannot be hidden in this manner, much less can it be destroyed, and something that did not in reality exist be placed in its stead. The substance is superior to the mere drapery of words with which one party wishes to bring into existence and clothe an unreal authority.' See, also, *Kausal* v. *Minnesota, etc., Ins. Association,* 31 Minn., 17, in which the act of an insurance agent in making out an incorrect application was held chargeable to the insurer, and not to the insured, notwithstanding the insertion of an agency clause in the policy.

"In *Planters', etc., Ins. Co.* v. *Myers,* 55 Miss., 479, an agency clause in a policy of insurance was held to be void, as involving a legal contradiction. The applicant made truthful answers to certain interrogatories propounded by the agent, who stated certain things that were not true. They were held not to be binding upon the insured. Speaking of the agency clause, it is said: 'The verbiage of this condition is not candid. It seems to have been used with studied design to obscure the real purpose. It is a snare, set in an obscure place, well calculated

to escape notice. It is not written or printed on the face of the policy. It is not so much as alluded to in the application; nor is the agent, in his printed instructions, enjoined to inform those with whom he treats of it. . . . Its inevitable effect is to greatly weaken the indemnity on which the assured relied. It is inconsistent with the acts and conduct of the insurance companies in sending abroad all over the land their agents and representatives to canvass for risks. It is an effort by covenant to get the benefits and profits which these agents bring them, and at the same time repudiate the relation they sustain to them, and to set up that relationship with the assured, and that, too, without their knowledge and consent. It is not a limitation or restriction of power, but the dissolution of the relationship with themselves and the establishment of it between other parties.'

"The case of *Schunch* v. *Gegenseitiger Wittwen und Waisen Fond.* 44 Wis., 369, is almost precisely like the instant case. The constitution of the defendant corporation, whose governing body or directory was elected by the several "groves" (corresponding to the sections in this case) of the United Ancient Order of Druids, declared that every member whose assessment was not paid by his grove to the directory within thirty days after demand made, forfeited his claim to have a certain sum in the nature of life insurance paid to his widow or heirs after his death. It was held that in view of all the provisions of such constitution, the benevolent object of the corporation, and the fact that the several groves are, at least, as much its agents to collect and pay over the dues of their members as they are agents of the latter, in case of a member whose dues have been fully paid to his grove at the time of his death, the amount of insurance might be recovered, notwithstanding a default of the grove in paying over such dues to the defendant.

"The agency clause was also once before this court in the case of *Grace* v. *American Central Ins. Co.,* 109 U. S., 278, in which a clause in the policy that the person procuring the

insurance to be taken should be deemed the agent of the assured and not of the company, was held to import nothing more than that the person obtaining the insurance was to be deemed the agent of the insured in the matters immediately connected with the procurement of the policy, and that where his employment did not extend beyond the procurement of the insurance, his agency ceased upon the execution of the policy, and subsequent notice to him of its termination by the company was not notice to the insured.

"In the following cases the officers of the subordinate lodge, or conclave, were treated as the agents of the supreme conclave in the matter of granting extensions of time for the payment of assessments: *Whiteside* v. *Supreme Conclave,* 82 Fed. Rep., 275, and *Knights of Pythias* v. *Bridges,* 39 S. W. Rep. (Tex.), 333.

"The decisive consideration is this: Chadwick was the agent of the defendant, and of the defendant only, after the receipt of the money from Withers. Under sec. 10 he then became responsible for it to the board of control. In rendering his monthly accounts and paying over the money he acted solely for the defendant. From the time he paid the money to Chadwick the insured had no control over him, and was not interested in its disposition. Unless we are to hold the insured responsible for a default of this agent, which he could not possibly prevent, we are bound to say that his payment to this agent discharged his full obligation to the defendant. That it should have the power of declaring that the default of Chadwick, by so much as one day [and it did not exceed four days in this case], to pay over this money, should cause a forfeiture of every certificate within his jurisdiction, is a practical injustice too gross to be tolerated.

"Without indorsing everything that is said in the cases above cited, we should be running counter to an overwhelming weight of authority were we to hold that the agency clause should be given full effect. regardless of other clauses in the certificate

or by-laws, indicative of an intention to make the officers of subordinate lodges agents of the supreme or central authority. We should rather seek to avoid as far as possible any injustice arising from a too literal interpretation, and only give the clause such effect as is consistent with the other by-laws and with the manifest equities of the case. We are, therefore, of opinion that in this case the secretary of the section was in reality the agent of the supreme lodge from the time he received the monthly payments, and that the insured was not responsible for his failure to remit immediately after the tenth of the month."

*Reversed, and decree here for appellant.*