LUCY MORGAN ET AL. *v.* INDEPENDENT ORDER OF SONS AND DAUGHTERS OF JACOB OF AMERICA.

[44 South., 791.]

1. INSURANCE. *Mutual benefit society. By-laws. Construction. Forfeitures.*

The by-laws of a mutual benefit society are to be liberally construed in favor of the insured, so as to prevent a forfeiture.

2. SAME. *Rules.*

Mutual benefit societies are subject to the same rules of law as other life insurance companies, save in so far as such rules may be lawfully modified by the objects and purposes of the society's organization.

3. SAME. *Waiver. Estoppel.*

An insurance company or benefit society can not exempt itself in advance, either by contract or by-laws, from an estoppel to assert a forfeiture of a policy where there has been a breach of conditions on the part of the insured and the society's conduct has been such as to affirmatively induce the belief that the forfeiture was waived.

4. SAME. *Case.*

Under the by-laws of a benefit society, requiring payment of one dollar in advance on the first day of each month and declaring that a member who failed to pay an assessment, on or by the day it becomes due, was thereby suspended, and providing that a suspended member could be reinstated only in a designated way; a member was not suspended who fully paid all demands for eleven years, because he was then delinquent one day in the payment of one dollar, received from him the next day, as were all subsequent assessments when due, without question.

5. SAME. *Equitable estoppel. Forfeitures. Mala fides.*

A mutual benefit society may be estopped by conduct to the same extent as a natural person, and a forfeiture of an insurance policy will not be adjudged in its favor where the insured acted in good faith and paid all the dues required and the society was not injured by any act of his.

. FROM the chancery court of first district, Hinds county.

HON. G. GARLAND LYELL, Chancellor.

Mrs. Morgan and others, appellants, were complainants in the court below; the Independent Order of Sons and Daughters of Jacob of America, the appellee, was defendant there. From a decree in favor of the defendant, complainants appealed to the supreme court.

The complainants, as beneficiaries in a policy of insurance or death benefit certificate issued by the defendant order to one Samuel Morgan, sued to recover thereon. The bill of complaint alleged the death of the insured while in good standing as a member of the order. The certificate stipulated that payment of the benefit or amount of insurance would be made subject to the provisions of the constitution and laws of the order. The appellee's defense was that a certain monthly assessment of dues, under the constitution and laws of the order, payable on the first day of the month, was not paid by decedent until the second day of the month, and that he was, at his death, therefore not in good financial standing with the order, and, according to the laws of the order, a recovery could not be had by complainants. There being evidence to substantiate the defense, the chancery court dismissed the bill.

The facts are further stated in the opinion of the court.

*Watkins & Watkins,* for appellants.

The by-laws of a mutual benefit society, or order, should be liberally construed in favor of the insured, so as to prevent a forfeiture. *Murphy* v. *Independent Order, etc.,* 7 Miss., 831, 27 South. Rep., 624. The by-laws of the order were not self-executory. It is a general rule of law that a member of a mutual benefit order, who has been delinquent, does not lose his rights and benefits, even on account of delinquency, unless the by-laws of the order provide, in express and unambiguous terms, that upon his delinquency, he shall *ipso facto* stand suspended. *Harris* v. *Wilson,* 86 Mo. App., 407.

It will be noted that the by-laws of the appellee are, for the most part, ambiguous and inartificially drawn. It is not the duty of any court to construe the by-laws of lodges and insurance orders unfavorably toward beneficiaries; and the court can only allow a self-executory forfeiture in cases where the by-laws of the order require it in such plain and explicit terms as to bear no other construction. The by-laws in this case do not say that a member who fails to pay his dues on the first of the month, shall *ipso facto* stand suspended; but they merely say that he is suspended, which is an entirely different expression, of exceedingly doubtful meaning; and no authorities can be found, holding that a statement in the by-laws of such ambiguous nature, will operate as a self-executory suspension of a member. The appellee is a mutual benefit society, in existence among the negroes of Mississippi and Alabama, and as a mutual society it is subject to the same rules of law which govern other life insurance companies, except in so far as such rules are lawfully modified by the objects and purposes of the society. *Brady* v. *Association,* 14 N. Y. Sup., 272; *Carton* v. *Benevolence Society,* 3 Daly (N. Y.), 20.

The by-laws here in question are based upon a false statement of facts. In the case of *Murphy* v. *Independent Order, etc., supra,* this court construed a by-law of this same appellee, seeking to make the appellee's local officers and agents the agents of the individual members of appellee. Counsel who represented the appellee in the case cited, argued therein with great insistence that the by-law of the order, then under consideration, formed part of the contract between the order and its members, and should be upheld. This court, however, held that the by-law was contrary to the actual facts, that the collector of the lodge was not employed by the members, that the members had no right to discharge him, and had no right to direct and influence his actions. Thus, the court held that a by-law declaring the local officers of the lodge to be agents of the members of the lodge, was contrary to the actual facts, and void. So, in this

case at bar, appellee's by-law, whereby it seeks to justify itself for the retention of the decedent's money, is contrary to the actual facts, and rests upon an assumption of fact not true.

Certainly, appellee, as a mutual benefit order, can be estopped by its contract in like degree as private individuals may be. The acceptance and retention by appellee of the insurance money paid by the decedent for insurance, operated to waive any suspension of the decedent, if any existed. *Lord* v. *Society,* 88 N. W. Rep., 876; *Beil* v. *Knights of Honor,* 80 N. Y. App., 609.

Certainly, where, as in this case, the decedent in good faith had fully paid all dues and assessments for eleven years, and merely failed to pay an assessment of one dollar, due on the first of the month, but which was promptly paid the succeeding day, and accepted by the appellee's agents, as were his subsequent dues, the appellee, not having notified him of his suspension, was estopped to assert that he was a suspended member, and that it was not liable on his beneficiary certificate payable to appellants. *Brotherhood of Carpenters* v. *Dunkle,* 69 N. E., 708; *Littleton* v. *Wells,* 56 Atl. Rep., 798; *O'Brien* v. *Union,* 76 Conn., 52.

*Green & Green,* for appellee.

The contract of insurance, evidenced by the appellee's certificate and by-laws, expressly provides that a member must be in good financial standing, before any benefit can, in any event, be paid on his account by appellee. Promptness in payment by members in an organization, such as is appellee, is absolutely requisite. After the decision of this court in the case of *Murphy* v. *Independent Order, etc.,* 77 Miss., 830, the by-laws of appellee were revised, and it was expressly provided by Art. XI, sec. 5, of the revised by-laws, that each and every member of a subordinate lodge of the order should be required to pay into the treasury of the supreme grand lodge a regular monthly advance assessment of one dollar on the first day of each month

during every year in order to continue in force his contract of insurance. This provision, accordingly, was not in the by-laws when construed by the court in the *Murphy case, supra,* but, instead, there was a provision requiring the "worthy scribe" of the order to notify each member as to his arrears. The revision of the by-laws was expressly to comply with the decision of the *Murphy case.*

We cannot follow the learned counsel for appellants in their hair-splitting distinction between a declaration in a by-law to the effect that a member shall be *ipso facto* suspended and the declaration that he is suspended. The language of the provision of the by-laws must be given a rational construction; and we submit that a declaration that a party is "nonfinancial," is as strong a declaration in that provision, as is requisite.

Appellants do not allege in their bill of complaint that the by-laws were not self-executory, and as their claim against appellee is made under the provisions of the beneficiary certificate, which required payment by decedent of his dues upon the first day of the month, it is essential that the claim of appellants should be in accordance with the terms and provisions of the beneficiary certificate and of the by-laws referred to in the certificate, and not in antagonism to them. It is expressly provided, under the terms of the certificate, that the beneficiary should only have his benefit "paid per the provisions of the constitution and by-laws."

We ascribe unqualifiedly to the doctrine that where a contractual relation exists, it is beyond the power of a benevolent society to pass such laws as would unreasonably restrict the rights of the parties. But when the benevolent society and the members enter into an express contract, which is clear and concise in its provisions, we submit that this court will not set the same aside, because it may appear unreasonable. A contract of this nature is as sacred as any other contract; and there is nothing to differentiate it from a contract between two individuals, there being no question of public policy involved.

In *Phillips v. Baltimore Mutual Aid Society,* 6 Pa. S. Ct., 157, cited in 5 General Digest, p. 1082, it is held that "no recovery can be had on an insurance policy providing that any member in arrears for more than three weeks shall not be entitled to benefits, but such member may be reinstated by paying arrears and passing examination, but would not be entitled to benefits, should sickness, accident or death occur within five weeks after reinstatement, when the insured dies within two weeks after a reinstatement." To the same effect are *Alters v. Pro. Ass'n* (C. P.), 43 W. N. C., 336, 7 Gen. Dig., 1155; *Dabura v. Sociedad De La Union,* 59 S. W. (Texas), 835.

No obligation existed on the part of the appellee to return the money paid in by decedent, because, under the contract between decedent and appellee, if the decedent should continue to to pay dues, then, after the expiration of sixty days, there would be due to decedent a benefit; hence, the consideration has not failed, and the obligation upon appellee has not been shirked in any wise. Moreover, no administration has been taken out upon the estate of the decedent, and until there shall have been an administration, there is no one to whom the appellee could have made payment, even if such obligation existed.

MAYES, J., delivered the opinion of the court.

On the 5th day of October, 1894, Samuel Morgan became a member of the Independent Order of the Sons and Daughters of Jacob of America. This organization is a mutual benefit association. Samuel Morgan was about fifty-eight years old at the time he joined, and was illiterate, unable to read or write, or sign his name. The beneficiaries named in the insurance certificate issued by the order of the Sons and Daughters of Jacob of America at the time he joined the order are the appellants in this case, Lucy Morgan and others. Samuel Morgan was continually a member of this order from the time he joined in 1894 until the day of his death, which occurred on the 15th day of July, 1905, eleven years after he became a member of

the order.  Throughout all this period of time he paid all the obligations of the order required by its rules, and at the time of his death there was nothing due from him to the order; he having paid all dues and assessments up to that time. After the death of Samuel Morgan, the beneficiaries named in the policy of insurance presented same to the order and made demand on it for the sum due them as per the certificate of insurance issued to Samuel Morgan in his lifetime. The Sons and Daughters of Jacob declined to pay the insurance, and denied their liability under the insurance policy, on the ground that at the time of the death of Samuel Morgan he was what is called "nonfinancial"—that is to say, not in good standing with the order,—and therefore the certificate of insurance was void.  This claim of nonliability on the part of the order is based upon the fact, as they claim, that by sec. 5 of Art. XI of the by-laws each and every member of a subordinate lodge of the order is required to pay into the treasury of the Supreme or Grand Lodge, located in the territory of his or her membership, a regular monthly advance assessment of $1 on the first day of each month, and they claim that Samuel Morgan did not pay this assessment for June, 1905, on the first day of June, as required by this article of the by-laws.  The facts shown by the record, however, are that, while it is true that Morgan did not pay on the first day of June, he did pay, as the receipt shows, on the second day of June, and a receipt was issued to him for this June assessment.  At the time he paid this June assessment it was accepted by the scribe of the local lodge to whom it was properly payable, and by him forwarded to the Grand Lodge, and nothing was said to him at the time about this fact rendering him "nonfinancial" in the order, or, in other words, suspended.

The appellee hopes to win this suit upon this solitary fact; that is to say, escape liability because this assessment for June was not paid upon the first day of June, but upon the second day, and therefore, Samuel Morgan, under other by-laws which

we shall hereafter quote, became suspended from the order, *ipso facto,* without further action on the part of the order, and his beneficiaries were not entitled to recover on this policy. By sec. 1 of Art. IV of the by-laws of the order, it is provided that "a member, by the records of his or her lodge, and by returns to and records of Supreme and Grand Lodge, shown fully and regularly paid on all financial claims of the order, due after date of his or her membership, is, if since his or her joining or renewing or reinstating more than sixty days have elapsed, a financial member of the order." By sec. 2 of Art. VI, "Any member who owes three months' dues, or fails to pay any assessment on or by the date it is due, or fails to pay any Supreme or Grand Lodge tax when due, or fails to pay any fine in thirty days after imposed, or fails to pay any tax of his or her lodge when due, is nonfinancial and suspended from the order." And by sec. 3 of Art. VI, it is provided that "a nonfinancial and suspended member, possessed of the qualifications of a new applicant for membership in the order, personally appearing in a regular meeting of his or her old lodge, paying up in cash all dues, taxes, assessments, fines, and lodge debts held in arrears against him or her, shall, according to limitations under which new members become benefit members, be reinstated to financial membership." The sections under which the order claims exemption from liability for this insurance are sec. 2 of Art. VI and sec. 5 of Art. XI. Section 5 of Art. XI requires the payment, in advance, of $1, on the first day of each month; and sec. 2 of Art. VI provides that any member who fails to pay any assessment on or by the date it is due is nonfinancial and suspended from the order. The contention of appellee is that, because this assessment of $1 for June was paid on the second day of June, instead of the first, Samuel Morgan, by virtue of this section, became "nonfinancial" and suspended from the order, and therefore the insurance policy was vacated. It must be borne in mind, however, that the local scribe accepted this assessment

on the second, issued his receipt therefor, sent it in to the Grand Lodge, and again a month afterwards accepted another payment, and that no notice was ever given to the insured that these payments were not accepted as a continuation of the insurance, or that the order considered him nonfinancial and suspended. When a member becomes nonfinancial and suspended, the only provision that is made for his reinstatement is by personally appearing in a regular meeting of the lodge, and there paying in cash all debts, etc., in arrears against him, whereupon he is admitted according to the limitations under which new members can become benefit members.

The court cannot overlook the fact that associations of the character now before the court largely deal with the illiterate and ignorant. The by-laws consist of a multiplicity of rules and regulations in volume composing a small book. A correct interpretation of their meaning often puzzles the most astute. Is it, then, a matter of wonder that courts construe their contracts most favorable to the insured? This court has said in *Murphy* v. *Independent Order, etc.*, 77 Miss., 830, 27 South. Rep., 624, 50 L. R. A. 111, that in dealing with these orders there shall be a liberal construction of the by-laws in favor of the insured, so as to prevent a forfeiture, if possible. This is but the announcement of the universal rule upon this subject by all the courts, the rectitude and wisdom of which is made manifest by this record, wherein this order is seeking to invalidate the insurance policy of Samuel Morgan, on which he has paid for eleven years, because the assessment was paid on the second day of June, instead of the first, just one day after the date the by-laws specified that it should be paid. In *Thompson* v. *Knickerbocker Ins. Company,* 104, U. S., 252, 26 L. Ed. 765, in the conclusion of the opinion, the court says: "Courts do not favor forfeitures, but they cannot avoid enforcing them when the party by whose default they are incurred cannot show some good and stable ground in the conduct of the other party on which to base a reasonable excuse for the default. We do

not accept the position that the payment of the annual premium is a condition precedent to the continuance of the policy. That is untrue. It is a condition subsequent only, the nonperformance of which may incur a forfeiture of the policy, or may not, according to the circumstances. It is always open for the insured to show a waiver of the condition, or a course of conduct on the part of the insurer which gave him just and reasonable ground to infer that a forfeiture would not be exacted. But it must be a just and reasonable ground, one on which the assured has a right to rely." The principles announced above are repeated in *Hartford Life & Annuity Ins. Co.* v. *Emily Unsell,* 144 U. S., 439, 12 Sup. Ct., 671, 36 L. Ed., 496, and *Phœnix Mutual Life Ins. Co.* v. *Caroline R. Doster et al.,* 166 U. S., 30, 1 Sup. Ct., 18, 27 L. Ed., 65.

Mutual benefit societies are subject to the same rules of law that govern other life insurance companies, except in so far as the rules of law appertaining to other life insurance societies may be lawfully modified by the objects and purposes of the organization of the society. No insurance corporation or society can, by contract or by virtue of its by-laws, exempt itself in advance from liability to estop itself from asserting a forfeiture of a policy of insurance, when there has been a breach of its conditions on the part of the insured and the conduct on its part has been affirmatively such as to induce the belief that the forfeiture has been waived. After the failure of Samuel Morgan to pay the June assessment the day it was due, if the lodge was to treat him as nonfinancial and suspended from the order, it was their duty to decline to receive further assessments from him until he should have been reinstated according to sec. 3 of Art. VI; that is, until he should have personally appeared at a regular meeting of the lodge and paid in cash all dues, taxes, and assessments. If they considered him nonfinancial and suspended, he was a stranger to the order from the date he became so, and they had no right to accept his money under such circumstances as would lead him to believe that he was

still a financial member of the organization; and, if they did, they are estopped to deny liability on the insurance certificate issued to him, in the absence of the record showing that Morgan was notified that he was nonfinancial and suspended, and that the money was taken only as an application for reinstatement. It is true that under sec. 11 of Art. XI, it is provided that a person, "paying his or her overdue assessment or tax but applies to be reinstated," and that "a receipt given a person for payment of any financial claim of the order shall in no wise waive, or constitute a waiver, of the suspension of such person for nonpayment of any prior financial liability to the order." In other words, by sec. 11 of Art. XI, the order attempts to insert a by-law to relieve it from any act of estoppel under the law. This cannot be tolerated.

It is argued by appellant that sec. 2 of Art. VI of the by-laws, which provides that a member shall be nonfinancial and suspended from the order on failure to pay any tax or assessment when due, is void, because it is harsh, unjust, and unreasonable. We are not called upon to determine this question. It is not essential to a decision of this case. Neither is it necessary for us to decide whether or not this section, *ipso facto,* suspends a member from the order upon failure to pay any assessment or tax upon the day it falls due, because the appellees have estopped themselves to set up any claim under this section for the nonpayment of this tax on the day it was due, for the reason that they have accepted the June payment and the July payment as though there had been no default, and they have continued in every way to treat Samuel Morgan as a financial member, and have not in any way put him on notice that he was suspended. If it be considered that for a violation of sec. 2 of Art. VI, a member is *ipso facto* suspended from the order, it follows that the order from that time on must decline to receive his dues, except in the way provided in sec. 3, of the same article of the by-laws; that is, by requiring him to personally appear at a regular meeting of the lodge and pay

all dues, etc. If it be considered that by sec. 2 aforesaid, a member is *ipso facto* suspended, and that no other notice to him is necessary, it still follows that where that member is continued in the belief that he is a member in good standing, and offers his dues to the lodge, which are accepted by it, if they intend to treat it as an application for reinstatement under sec. 11 of Art. XI, it then requires some affirmative action on the part of the order, and they must notify the member paying the tax or assessment that they accept it only under the conditions imposed by sec. 11 of Art. XI; that is to say, merely as an application for reinstatement.

Mutual benefit orders can be estopped by their contract just as private individuals are estopped. Any clause in any order which contracts against the effect of acts on their part which would create an estoppel on the part of individuals is in contravention of the law and void. For eleven years Samuel Morgan had paid his dues, and the only claim of exemption from liability by the order is that towards the close of his life, instead of paying on the first day of June, he paid on the second day of June. We can imagine no more technical defense issuing from an order, the declared purposes of which are to promote benevolence, establish benefit funds, and render aid to the needy, sick, and distressed member, than the defense which is sought in this case. If the order seeks to avoid its liability by requiring of its members technical exactness in the payment of their dues, this court will exact of it technical exactness in its moral duties towards its membership, to the end that none may be misled in supposing that they are laying by something for the dependent ones left, when the hand that has earned the money wherewith to pay the dues to the lodge is cold and still. Forfeitures are hateful to the court. This court will never avoid an insurance policy, acted upon in good faith by the insured, where the dues have all been paid and the company is in no way prejudiced by any act of the insured, unless it be in the clearest case of a violation of good faith with the insurance company.                                    *Reversed and remanded.*