MASONIC BENEFIT ASSOCIATION *v*. ANN HOSKINS.

[56 South. 169.]

1. MUTUAL BENEFIT INSURANCE. *Certificate. By-laws. Presumption.*

Where a certificate issued to a member in a mutual benefit association provides that "any failure to comply strictly with the laws and regulations of the order as prescribed by its grand lodge, causes forfeiture of the membership represented by this cetificate." This povision in the contract does not at all expressly provide that the member should be bound by all by-laws and regulations then in force or thereafter to be enacted.

2. BY-LAWS. *Presumption.*

There is no presumption that by laws shown to have been enacted after the certificate of membership was issued were in force when such certificate was issued and in the absence of any provision in the certificate that the member should be bound by subsequent enacted laws, he is not affected by such laws.

APPEAL from the chancery court of Yallabush county. HON. I. T. BLOUNT, Chancellor.

Suit by Ann Hoskins against the Masonic Benefit Association. Decree for plaintiff and defendant appeals. The facts are as follows:

One Morris Hoskins, the husband of appellee, procured a benefit certificate in the appellant association in the year 1895, which entitled his window, or his legal representatives, in the event of his death, to the sum of money here sued for. The holder of each certificate was required to pay one dollar per month to the en-

dowment fund. In the year 1904 certain by-laws of the association were compiled and promulgated, one of the provisions being that any failure to keep all dues paid worked a forfeiture of membership. Morris Hoskins kept all of his dues paid up to March, 1907. He failed to pay dues for March, April, May, June, July, and August, 1907. He got sick a few days prior to August 13, 1907, and on that day applied to the secretary of the local lodge for what is known as a "renewal certificate" and paid two dollars for same. The renewal certificate was issued on August 19th. Under the by-laws of the association, it did not become valid until after thirty days. Hoskins died August 21st. After his death, appellee filed a bill for discovery and for a recovery of the amount due under the certificate. The defense was that Hoskins had forfeited his membership in the association by failing to pay dues, and that the by-laws of the association were binding upon him and all other members, whether they joined the association before or after their promulgation.

*George B. Power* and *Cassedy & Butler,* for appellant.

The only remaining question is whether or not decedent's death within thirty days after his renewal made void the renewal certificate.

The renewal certificate provides on its face, "Not valid until after thirty days." And it is an admitted fact in this case that the renewal was applied for on August 13th, issued on August 19th and decedent dies on August 21st. Section 20 of the Constitution provides for renewals upon the payment of the fee of two dollars, and further provides that "such renewal will not be valid until after thirty days, but must pay the first assessment due after date of said renewal," meaning thereby that the member must pay the next assessment. Section 27 provides, "No. 'renewal membership' shall be

valid until thirty days shall have elapsed after the re-
newal fee of two dollars shall have been received by the
treasurer of the M. B. A.   However, the thirty days
shall be reckoned, etc.''   Thus it appears that in ex-
press and unmistakable language it is provided that the
renewal certificate shall not be valid until after thirty
days.  The reason for this is obvious.  No member should
be permitted to reinstate himself after a long delin-
quency when in his last illness; and it may be well to
note in this connection that the laws require a mem-
ber to apply for his renewal in open lodge and pro-
vides that his application therefor must be accompanied
by a health certificate.  These formalities were not com-
plied with in the instant case but the order seeks to take
no advantage of that fact; and in this same connection
we call the court's attention to the further fact that the
claim was barred by the provisions of sections 5 of the
constitution considered in connection with section 2575
of the Code of 1906, but the order seeks to take no ad-
vantage of the statute of limitations.  In other words,
it submitted its cause on the merits; and yet the chan-
cellor finds that the proof does not show that the de-
ceased was non-financial.  On the contrary, we say that
the proof is conclusive that he was non-financial and the
only scintilla of evidence tending to show otherwise is
that about a year and three months after the date of
death, proof of death was made in it, it is stated that
decedent was in good standing at the time of his death.

Counsel for appellee have filed a forty-seven page
brief in an effort to uphold the chancellor's finding and
this within itself is *prima facie* evidence of error.  Many
cases are cited in support of his contention.  We have
no quarrel with the authorities.  The trouble is, in our
view, they have no application to the case now before
the court.  The question now under discussion, in our
humble judgment, is absolutely settled by the case of
*Order of Jacobs* v. *Moncrief,* 50 So. 558.  It is quite

true that the Moncreif case was presented on demurrer, but it is elemental that the allegations must conform to the proof. In other words, the fact controls whether alleged and admitted or proven and denied.

If under any possible view the court should be of the opinion that the constitution and by-laws are not a part of the record in this case, or that the case is not to be considered here as if they were a part of the record, then we respectfully submit that the chancellor was in error in refusing to remand the case to permit further proof as to their validity, etc. It will be noted that counsel for appellant generously agreed that the case might be heard before the expiration of the four months and had no opportunity to ascertain that the court would sustain the motion to suppress the deposition until it was acted upon and the case decided, and immediately thereupon then requested the court to remand the case for the purpose of taking further proof on this point. Courts sit to administer justice, to arrive at the truth, to do equity, and while they have discretion in such matters it cannot be arbitrarily exercised and the rights of litigants set at naught. A striking case is that of *Russell* v. *Denson,* not yet reported, decided March 13, 1911, where this court reversed a case because the trial court refused complainant leave to amend his bill after such leave had been tendered and declined and refused him leave to take a non-suit after the bill had been dismissed. And in this connection we deem it not a miss to call the court's attention to the fact that in the recent case of *Mitchell* v. *State,* 95 Miss. ——, this court did look to the opinion of the trial court in ascertaining the grounds upon which its judgment was predicated, but as hereinbefore stated under our view is wholly immaterial for the purposes of this case whether the court considers the chancellor's opinion as a part of the record or not.

We respectfully submit that under no view of the case and under no view of the law can the chancellor's finding be sustained. The facts are admitted, or conclusively established; the issue is a narrow one, there are no complications. If the order had the power to enact the constitution and laws in question these provisions mean what they appear to mean on their face this case must be reversed. Counsel concede that the order had the power to provide that failure to pay worked a forfeiture; that the order had the power to provide that no reinstatement should be valid until after thirty days and seek to uphold the finding of the chancellor in an effort to make the English mean something which in its ordinary acceptation it does not mean.

*Creekmore & Stone* and *L. J. Winston,* for appellant.

The main question in this case is whether or not Morris Hoskins stood suspended on account of the non-payment of monthly dues. It is not contended that there was any affirmative action taken by the lodge after the failure to pay the monthly dues, and formally suspending the member. This question was one of considerable importance at the trial of this cause, which took place the first week in November, 1909, the final decree being rendered in vacation in January, 1910. We contended at the trial that this was the only point of importance in the case, and that a decision of this point necessarily involved the entire disposition of the case, and we think yet that this is true. To sustain our position, that the insured became suspended *ipso facto* on the failure to pay the monthly dues, we presented authorities from all over the country, holding that the provisions of fraternal insurance socieites, similar to sections 5 and 12 of the constitution of defendant company, had been held to be self-operative in every court, requiring the formal act of suspension on the part of the defendant lodge, or its subordinate lodge. 28 Cent. Dig., ''Insurance,'' secs.

891, 900, 905, 87 Am. St. Rep. 860, 5 L. R. A. 805, 6 L. R. A. 95.

We also refer to the decision of our own court in the case of *Murphy* v. *Independent Order of Sons and Daughters of Jacob of America,* 27 So. 624, and especially to the second paragraph of the opinion by Chief Justice Whitfield where our court upheld the right to make such self-operative provisions in an insurance contract; also, to the decision of our court in *Morgan* v. *Independent Order,* 90 Miss. 864, 44 So. 791, where our supreme court, while declaring that a decision as to the operation of certain provisions was not necessary to a decision of that particular case, seems to us to very strongly favor our view of the operation of such provisions. But since the trial of the case at bar, this question has been settled by decision of the case of the *Order of Jacob* v. *Moncrief,* 50 So. 558. This case is directly in point, and consideration, and citation of the foreign cases, is unnecessary except to show that in taking this stand as to the operation of provisions in an insurance contract, our court speaking through Justice Mayes, was in line with both federal and state courts all over the country. Of course, where there is a direct provision of the constitution of an insurance order that notice of suspension for non-payment of dues will be served on a delinquent, or that formal action shall be had by either the Grand Lodge or the subordinate lodge on account of the non-payment of the dues formally suspending the delinquent, it would be unjust to hold the member suspended unless these preliminary requirements had been fulfilled; the same would be true where there were facts, as in the *Morgan case* in 44th So., that would necessarily have taken this case out of the general rule. There is nothing in the Morgan case or the Murphy case inconsistent with the later case of Moncrief, or with the contention of appellant in the case at bar. The provisions of the constitution of the appellant are plain and unequivocal, and the

provisions for reinstatement of a member, suspended for non-payment of dues, are the most generous that we have ever known. It will be rembered that the deceased in this case undertook to take advantage of this provision as to renewal, and it was only when he died, and failed to get the benefit of the renewal certificate, that his wife found fault with the order for having previously suspended the deceased for non-payment of his dues.

Walter P. Armstrong, for appellee, filed an elaborate brief contending that the by-laws of the defendant were not properly proven and hence were ineffective to avoid Hoskins' policy.

Even if the by-laws were properly proven, they would not have avoided this policy because:

First. They were not registered in the office of the insurance commissioner.

Second. They were passed after the issuance of Morris Hoskins' policy.

Third. They were not self-executing and no action was taken to suspend Hoskins.

Defendant is estopped from setting up any forfeiture of Hoskins' policy and cites the following authorities: 29 Cyc., 232; *Schenfler* v. *A. O. U. W.*, 47 N. W. 799 (Minn.); *Royal Circle* v. *Achterrath,* 204 Ill. 549, 63 L. R. A. 252; *Pethericks* v. *Order* (Mich.), 72 N. W. 262; *Monahan* v. *Supreme Lodge, etc.,* 92 N. W. 972 (Minn.); *Royal Circle* v. *Achterrath,* 204 Ill. 549, 63 L. R. A. 458; *Monahan* v. *Supreme Lodge, etc.,* 92 N. W. 972 (Minn.); Opinion of Chancellor, Tr., pp. 42 and 43; *Herman* v. *Supreme Lodge Knights of Pythias,* 66 N. J. Law 77, 48 Atl. 1000; *Page* v. *Knights & Ladies of Am.,* 61 S. W. 1068 (Tenn.); *Herman* v. *K. of P.,* N. J. Law 77, 48 Atl. 1000; *Page* v. *Knights & Ladies of America,* 61 S. W. 1068 (Tenn.); *Supreme Lodge* v. *La Malta,* 95 Tenn. 166, 31 S. W. 493; Tr. p., 38 and 39; *Futch* v. *Jeffries,* 59 Miss. 512; 13 Cyc., 934; *Phoenix Ins. Co.* v. *Fuller,* 53 Neb. 811, 4 L. R. A. 408; *Kreis* v. *Railway,* 33 S. W. 65:

*Penn* v. *Western,* 15 L. R. A. 798 (Ill.) ; 2 Cyc., p. 1061;
16 Cyc., p. 380, title, Equity; 16 Cyc., p. 328, title
Equity; Fletcher on Equity Pleading and Practice, 697;
*Bower* v. *Bettis,* 48 S. W. 292 (Tenn.) ; *Thorington* v.
*Montgomery,* 10 So. (Ala.) 634; *Beard* v. *Green,* 51 Miss.
856; *Morgan* v. *Independent Order,* 90 Miss. 864; *Mose-
ley* v. *Order,* 77 Miss. 830; 3 Cooley's Briefs on Insur-
ance, 2383; 1 Cooley's Briefs on Ins. 709; *Miller* v. *Tut-
tle,* 73 Pac. 88 (Kas.) ; *Morrison* v. *Odd Fellows,* 18 N.
W. 13 (Wis.) ; 29 Cyc. 77; *Starling* v. *Order,* 66 N. W.
340 (Mich.) ; *Hobles* v. *Benefit Assn.,* 82 Iowa 107, 47
N. W. 683, 11 L. R. A. 269; 29 Cyc., 77; *Starling* v. *Order,*
66 N. W. 340; *Hobbs* v. *Benefit Assn.,* 82 Iowa 107, 47
N. W. 983; *Covenant Mutual Life Assn.* v. *Tuttle,* 87
Ill. App. 309, 310; *Grand Lodge A. O. U. W. of Mo.* v.
*Sater,* 44 Mo. App. 445; *Carnes* v. *Traveling Assn.,* 68
Am. St. Rep. 306, 106 Iowa 281, 76 N. W. 683; *Benefit
Assn.* v. *Warren,* 24 Ill. App. 357; *Ins.* v. *Comer.,* 17 Pa.
St. 136; *Warment* v. *Supreme Conclave,* 107 Ga. 115, 32
S. E. 951, 3 Am. & Eng. Ency. of Law, 1087; *Schnefler*
v. *A. O. U. W.,* 45 Minn. 256, 47 N. W. 799; *Harris* v.
*Wilson,* 86 Mo. App. 406; *Jelly* v. *Mutual Aid Society,*
95 N. W. 199, 120 Iowa 689, 98 Am. St. Rep. 378; *Brooks*
v. *Conservative Assn.,* 106 N. W. 913, 132 Iowa 377, 119
Am. St. Rep. 560; 3 Cooley's Briefs on Ins., 2391; *Mc-
Donald* v. *Chosen Friends,* 78 Cal. 49, 20 Pac. 41; *Su-
preme Lodge* v. *Wisher,* 72 Tex. 257; *Roger* v. *Society,*
55 L. R. A. 605, 3 Am. & Eng. Ency. Law, p. 1087; 29
Cyc., 182, and cases there cited; *Osterman* v. *Lodge*
(Cal.), 43 Pac. 412; 29 Cyc., 1714, and notes; *Morgan* v.
*Order,* 90 Miss. 847; *Murphy* v. *Independent Order,* 27
So. 624, 77 Miss. 111; *Order of Jacob* v. *Moncrief,* 50 So.
558; *Langenecker* v. *Trustees,* 87 Am. St. Rep. 860
(Wis.) ; *Robinson* v. *Central Ins. Co.,* 6 L. R. A. 96; *Fow-
er* v. *Life Ins. Co.,* 5 L. R. A. 805; *Lord* v. *Society,* 88 N.
W. 872; *Morgan* v. *Independent Order, etc.,* 90 Miss. 864;
*Mutual Reserve* v. *Hamlin,* 139 U. S. 297, 11 Sup. Ct. 614;

*Waterworth* v. *Am. Order of Druids,* 164 Mass. 574, 42
N. E. 106; *Supreme Counsel* v. *Orcuth,* 119 Fed. 682, 56
C. C. A. 249; *Columbus Life* v. *Harrihan,* 98 Ill. App.
22; 3 Cooley's Briefs on Ins., 2391.

WHITFIELD, C.

We think the testimony offered to prove the by-laws
and the constitution of this order by the witness Kelley
was rightly held incompetent by the court below. *Her-
man* v. *Supreme Lodge K. of P.,* 66 N. J. Law 77, 48 Ati.
1000; *Page* v. *Knights & Ladies* (Tenn.), 61 S. W. 1068.
But, under the peculiar circumstances of this case, we
think, if that were controlling, that the chancellor should
have remanded the case and permitted competent proof
to be taken.

But we think the chancellor was further correct in
holding that, if the constitution and by-laws had been
properly proven, the plaintiff was still entitled to re-
cover on the case made by the record. The provision
of the certificate on which the defendant relied as show-
ing that Morris Hoskins, the insured, was bound by these
by-laws, is in these words: "Any failure to comply
strictly with the laws and regulations of the M. B. A.
as prescribed by the aforesaid Grand Lodge causes for-
feiture of the membership represented by this certifi-
cate." It is perfectly obvious that this provision in the
contract does not at all expressly provide that Morris
Hoskins should be bound by all by-laws and regulations
then in force or thereafter to be enacted. The rule of
construction in cases of this kind is set out in *Morgan* v.
*Independent Order,* 90 Miss. 864, 44 South. 791, where
the court says: "The court cannot overlook the fact that
associations of the character now before the court largely
deal with the illiterate and ignorant. The by-laws con-
sist of a multiplicity of rules and regulations in a volume
composing a small book. A correct interpretation of

their meaning often puzzles the astute. Is it, then, a matter of wonder that courts .construe their contracts most favorable to the insured? This court has said in *Murphy* v. *Independent Order, etc.,* 77 Miss. 830, 27 South. 624, 50 L. R. A. 111, that in dealing with these orders there shall be a liberal construction of by-laws in favor of the insured, so as to prevent a forfeiture, if possible. This is but the announcement of the universal rule upon the subject by all the courts.''

Keeping in mind this rule of construction, it is further to be said that the overwhelming weight of authority is to the effect that in those provisions which purport to bind the insured, if there is no express provision that he shall be bound by laws to be enacted in the future, then such laws so enacted in the future do not bind the insured. 1 Cooley's Briefs on Insurance, 709; *Miller* v. *Tuttle* (Kan.), 73 Pac. 88; *Morrison* v. *Odd Fellows,* 59 Wis. 162, 18 N. W. 13; 29 Cyc. 77; *Startling* v. *Order,* 108 Mich. 440, 66 N. W. 340, 62 Am. St. Rep. 709; *Hobbs* v. *Benefit Assn.,* 82 Iowa 107, 47 N. W. 983, 11 L. R. A. 299, 31 Am. St. Rep. 466; and many other authorities. The cases of *Miller* v. *Tuttle* and *Startling* v. *Order, supra,* are very clear on this point.

The pamphlet purporting to contain the constitution and by-laws of this order, expressly states that they were compiled by a special committee in November, 1904. The benefit certificate was issued to Morris Hoskins in 1895. It thus clearly appears from the only evidence introduced on the subject, and that by the defendant, that those by-laws were passed nine years after the contract between Morris Hoskins and the defendant was entered into. The learned counsel for defendant say that, "where a certain constitution and by-laws are approved, they are presumed on the state of this record to have been properly adopted. It certainly could not be held on the state of this record to be necessary for the appellant to go back to the date of the issuance of any particular

policies and prove what changes had taken place in the constitution and by-laws since the issuance of same." But the first great trouble which counsel for defendant encounter is that the by-laws, when proved, are shown to have been enacted nine years after the certificate was issued, and it is wholly fallacious to say that any presumption could be indulged that by-laws which appeared from the defendant's own testimony to have been enacted nine years after the certificate was issued, were in force when the certificate was issued. It is perfectly correct to say that a state of affairs shown to have existed in the past may be presumed to continue to exist, in the absence of proof to the contrary. But surely there never can be any legal presumption that a condition of affairs shown to exist now, in the present, for the first time, existed in the past.

As very correctly said by learned counsel for appellee: "If the defendant's contention on this point were correct, then defendant could show that a set of by-laws were passed on the day before the member's death, and it would be presumed that they existed when the certificate was given twelve years before. That would be absurd." Since, therefore, the only evidence, after the constitution and by-laws are considered, as to when they were adopted, shows that they were adopted nine years after the certificate was issued, and since there is in the provision relied on in the certificate no express contract by Morris Hoskins to be bound by all laws thereafter enacted, the appellant was without any valid defense.

*Affirmed.*

PER CURIAM. The above opinion is adopted as the opinion of the court, and for the reasons therein set out the decree of the court below is affirmed.